Good morning. Our first case today is number 18-3764 United States v. Aldwin Vega. Mr. Surgent. Good morning, Your Honors. My name is Jay Surgent. I'm with the Wiener Law Group in Parsippany, New Jersey, and I'm out here to try the case out here some time ago, 2017. He was sentenced in December 2018. I'm going to rely on my brief, of course. By the way, the brief was done by the Public Defender's Office. My law firm, through myself, entered an appearance on the appeal on behalf of Mr. Vega after the Public Defender's Office out of its appearance. By the time we entered our appearance, the Public Defender's Office had filed an opening brief. Another panel was kind enough to let me submit our own brief and appendix. I had very significant constitutional arguments in that brief, but they decided that in light of the fact that we did the opening brief, that we would argue the opening brief. They withdrew as counsel and I remained, so I'm here on behalf of Mr. Vega, arguing the brief that had been submitted by the Public Defender's Office from Delaware. Well, we rely on my brief and appendix and incorporate them for record if there is an appeal. My time is limited, so I've decided not to reserve for rebuttal. As this Court is aware, Mr. Vega was convicted of conspiracy to distribute possession with intent to distribute one kilogram and pursuant to Section 846. Soon after his arrest, the U.S. Attorney's Office filed an 851. He was involved with this offense, which served as a predicate offense in Union County in 2001. The interesting part of the Union County predicate offense, while it was a five-year sentence, the judge in Union County, New Jersey in the sentence, and he actually served one day in jail and he went to rehabilitation. He got a suspended sentence. The Public Defender's Office had three principal arguments and the arguments basically centered around three things. One, the as the predicate felony with the statute regarding the enhanced sentence. He was given an enhanced sentence under 841 and he was imposed, he was given an eventual sentence of 22 years. One week after Mr. Vega was sentenced, the first step back was passed. He would have been facing a 15-year term at that point in time. On that first issue, we review for plain error, correct?  All right, and isn't it true that that's a complicated issue? So how could we conclude that it's plain error when it's a complicated issue that lawyers and judges wrestle with? Well, I think that lawyers and judges are still wrestling with the ad of this district and all the other districts throughout the United States with reference to the application and evaluation, whether it's a categorical approach or a modified categorical approach when they apply for additional exposure under 851 for sentencing. Right now in this district, we have three cases pending regarding this same issue regarding the application of the 851, whether a certain statute like this... So your best argument might be on the question of the positional isomers of cocaine. Right. Should we look at the Cathcart case in New Jersey in determining that question? I haven't reviewed the Cathcart case even though I saw it passing. I think that should be reviewed because if you look at the factors as far as the New Jersey statute that he was convicted of and the felony drug statute that existed at that time, it really doesn't match up. The New Jersey statute sweeps judges obviously more broadly, even as to the interpretation of cocaine. It says all cocaine. That doesn't exist in the federal statute. It's not a matchup. Mathis tells us that we can look at state court interpretations. And Cathcart at its word says that the state and federal law on this question cover the same types of cocaine. Yeah, but the cocaine itself is on a broader basis in New Jersey than it is under the federal law. That's how I'm reading it anyway. I think that goes to the point that Judge Hardiman has raised because you're here in plain air. Is it clear and obvious? Nobody's quite sure on this question. Well, I think if you take a look at Judge Walton's decision and application by use of the categorical approach, I mean he looked at it as that the statute that he was convicted under was basically could be applied to increase his federal term. I look at it to the extent this is that if you look at it, the factors and the categorical approach as it exists, I think it's incomparable. It can't be compared in light of the fact that the statute as written in New Jersey is much broader, even excluding the marijuana part of it, than the one-year statute to have a felony drug conviction. At this moment, at this moment in time, but not in 2001 when Vega was It was my understanding that the statute swept more broadly in 2001 as to the interpretation of what elements, the elements don't line up. The statute is broader in New Jersey. Explain for us how that's so. In what way do the elements not line up if you're comparing what it said in 2001 with The statute in New Jersey basically was a bifurcated statute with reference to marijuana and lesser forms of marijuana and then all other drug offenses. It didn't specify exactly what other drug offenses were involved, so that's not how I interpret the federal law. The federal law, I believe, covered certain parts of cocaine but not all parts of cocaine like it was covered under New Jersey law. So our position is is that bottom line is that in 802, a federal drug offense obviously was punishable by more than one year in prison, but it only included, I'm reading here, narcotic drugs, marijuana, antibiotic steroids, depressants, or stimulant substances and nothing else. New Jersey law, even 2001, was expanded way beyond that. So I can't see how there's a matchup with regard to that at all. I think it's very simple to, when you take analysis of the New Jersey law and the elements as it existed on his offense of 2001, using that as a predicate offense under 841. What were the elements of that 2001 conviction? The elements of that conviction is there was no record that was the entire case against him that he pled guilty to. The court, lower court, did not look into any of the background factors. There was no record provided with reference to any plea elocution, any indictment, nothing. He just concluded, well, in light of the fact... So as I understand the crux of your argument, you're saying that the reference to drugs was so generic that in 2001, New Jersey made certain drug distribution illegal and federal law had other drug distribution? No, I'm just saying federal law... What's the... Identify the distinction between New Jersey law at that time and federal law at that time such that under the categorical approach there would be, there would not be a match. Well, first of all, the federal law doesn't really mention anything about property. If you read the New Jersey law, it's very specific as to school property. The federal law doesn't mention anything about that. Yeah, but you don't raise that in this appeal. You haven't raised the property issue in this appeal. Yeah, well, there's not, there's not a... I think one reading the, I'm repeating myself, one reading the New Jersey law as existed in 2001, Judge Fisher, it's, New Jersey law was much broader than federal law. In the Villa's case, the government conceded that 2C35-7 covered substances that 802 does not, such as PCB, GHP, and other substances. So the 35-7 prohibits the possession with intent to distribute all forms of cocaine, including geometric, optical, and positional isomers. New Jersey law speaks more broadly than the federal law by including isomers, all isomers. Federal law excludes positional isomers. New Jersey law does not exclude positional isomers. Federal law does not exclude positional isomers. So, that is the difference. So, it shouldn't have been used as a derivative offense in order to increase the time that Mr. Vega got another 10 years under what they filed against him. So, that's our position with regard to that. As far as Mr. Vega exercises control, we're basically saying that looking at his participation, he really didn't have decision-making authority. He really didn't participate except buying and selling. He had nothing to do with planning and organizing. In the scope of the illegal activity, while extensive, he was involved with it in Pennsylvania. As far as the argument... When they needed a trap put into the car, he's the one that took care of that, right? Well, he was assigned to do that by Mr. Guadalupe as a menial task. He didn't offer that. He was assigned to do that. He fronted the cocaine. No, it was the distributors that fronted the cocaine. What do you mean? He supplied the cocaine, but he didn't... The cocaine that Martinez and Guadalupe and others got came from Vega, and Vega didn't ask for any money for it until they sold it. No, he didn't. I mean, he was their guy. He didn't. Was he not? He was their guy, but he was pursuant to the trial testimony. He was not their only supplier. There was Ryan and other people supplying the people out here with cocaine. There's 35 people involved out here that were eventually arrested, so he wasn't behind that at all. As far as the last point, it was substantively unreasonable, the sentence. If you take a look at what drew case with reference to the issuance of the... It was within guidelines. It was at the top of the guidelines, right? Yeah, it was at the top of the guidelines. Are there any cases that you can cite that are within guideline sentences where courts of appeals have held them to be substantively unreasonable? No cases that we know except for the fact is that the evidence introduced against Mr. Vega should have been excluded, and we make this as part of as the unreasonable conclusion of why they got this type of sentence. Under the Drew case, the government vacated his conviction, made an application in the Third Circuit to vacate his conviction, and the United States further agrees that... I'm reading... that shall not offer the evidence seized from the hotel room pursuant to the search warrant issued on January 31st, 2012 on any further charges. Then I come in here September of 2019, try the case with Judge Walton, and there is all the I just don't think it's right. I mean, it's a matter of public record that the U.S. Attorney's Office took the position that this evidence would not be used in any further proceedings, then hypocritically turned around and used that evidence against Mr. Vega. I just think it's ridiculous. It should have never been introduced against him, and there's no excuse why it was. It shouldn't have been. For those reasons, it feels though that the matter should be demanded for re-sentencing. Thank you. Thank you, Mr. Surgin. Mr. Kokas? Good morning, Your Honors. USA Donovan Kokas on behalf of the United States. I'd like to rest on my briefs as to the second and third issues, unless the Court has any questions about those. Regarding the first issue, it is on plain-error review, assuming it's reviewable at all. Again, plain-error wasn't pled in the opening brief, nor in the proposed substitute brief filed by Mr. Surgin. And this Court has said that an issue must be developed in an opening brief. It seems to me that the standard of review is integral to that issue. It takes me about an extra thousand words every time I have to lay out plain-error review anew, and we're already down to 13,000 words. So, you know, I'm approaching haiku proportions here eventually. As the first issue, I want to explain why I think the Court may have an in-bank problem with Ovilus, and then explain why I think you can avoid it in my case. But sooner or later, I think Ovilus is going to have to be cleaned up. Ovilus said that the New Jersey statute covers more drugs than the federal statute. It didn't say which date it was using. Ovilus was convicted. I'm glad you raised that, because we have a timing issue that's very important here. And the government has changed its view on that, I believe. Well, my view has been what my letter to the Court was. I just miswrote it when I wrote my brief, and someone pointed it out and reading it beforehand. But it doesn't matter either way in my case, because whether you take the date of the state conviction plus the date of the federal sentence, the laws were coextensive on those dates. But I that you compare the statutes on the date of the defendant's state conviction. So in our case, that's July of 2001. In Ovilus, the defendant's New Jersey convictions were in 2003 sometime. The law was coextensive there, and I'll explain shortly why that's the case. But the problem with Ovilus is it said it's not. It said the Court has found that New Jersey law is broader than federal law. I don't know which drugs it was thinking of. I assume it was one of the italicized ones in the block quote around pages 518, 519. But all of those drugs were covered by the federal law and by New Jersey law in January of 2019, all through, I'm sorry, of 2003. And almost all of them were covered by the federal government long before. So I just, I don't know what the Court was doing there, and I don't know whether it applied an offense-specific categorical approach or a definitional approach where you try to see whether the offenses in question match. Just for the benefit of the public here, we put all of our oral arguments on the website, so they're available for people to review. So that's why we try to make sure we have a recording. So, Mr. Kokos, you were in the middle of some rather abstruse citations to New Jersey law. I don't even know if you can pull that file back up, but if you can, more power to you. It's still loaded. So to answer Judge Fischer's question about Cathcart, New Jersey has a trio of statutes. They are New Jersey Code 24 colon 21-3 and New Jersey Administrative Code 13 colon 45H-1.7 and dash 10.1. All of those together say the following. Any time the federal government expands or contracts its drug schedules, schedules or deschedules a drug, that change is echoed in the New Jersey schedules 30 days later automatically if the Director of Consumer Affairs in New Jersey does nothing. Unless that person opts out. The default position is to conform New Jersey drug law with federal law. Absolutely. And so let me give you dates of the substances that Mr. Vega... That was a technique that was used during that period of time to bring the controlled substance schedules into conformance. Correct. Correct. It's the Me Too statute. And so PCP was regulated federally in 1978 and no evidence of any opt out. So New Jersey did a month later. Flunitrazepam 1996. Let's see. GHB was in federally in April 2000. That's the closest to his conviction. Cocaine isomers was in the 1984 Criminal Justice Act. So by 1985, New Jersey was regulating it. And that language is cocaine isomers, optical and geometric. So when Cathcart says all forms of cocaine are covered in New Jersey, remember the two forms being discussed there were optical isomers anyway. But Cathcart then immediately cites, I think in a footnote, the 812C statute, the federal statute that talks about the cocaine isomers federally, optical and geometric. So that's the frame of reference. To say that this would include positional isomers would be like saying a case from 1850 that discussed all wheeled vehicles means automobiles, right? They aren't around yet. In this case, positional isomers were just coming onto the radar. Various states have covered them, including for cocaine, but not New Jersey. New Jersey remains parallel to the federal government in that sense. So because of that, all of the substances mentioned were covered by the time he federally and in New Jersey by the time Mr. Vega was convicted in July of 2001. The only time that New Jersey's law will be broader, there are two circumstances. One is when the federal government descheduled the substance, which it did in September 2015 for Ioflupane. Martina's got this wrong. Martina says our Ioflupane as of 08 is still covered in New Jersey. That's not right. By October of 2015, Ioflupane by operation of the trio of statutes I read to you earlier was off the code in New Jersey too. But there is that one month period where New Jersey law would have been broader. And the only other time has been when New Jersey scheduled of its own accord bath salts. So that happened around April of 2011, and the federal government didn't do that until October of 2011. So during that period, New Jersey would have been broader. And then the only other time is the hemp issue. Now that's Mr. Vega's convicted as federal crime. But what New Jersey did was neither opt out nor in, but take an eight month period to study the effect that would have on itself. Ultimately, it brought itself into conformity with the federal code in August of 2019. So all of that's coextensive. So that's the problem I have with Obvious says it's not. I'm not sure what to do about that because Mr. Vega is right. The government didn't dispute that characterization of New Jersey and federal law. It just sort of said, well, even if that's right, our statute's divisible and it lost on that issue. So that's when you go in for a true daily double, if you lose, you lose everything. And that's what happened. So that's the end bank problem. Now you can avoid that in our case, because in our case, the statute is divisible. And to understand why this is something Obvious also got wrong, but luckily for me and dictum in a footnote seven, the elements of the crime are in the first sentence of thirty five seven. It says anyone who violates thirty five five within a thousand feet of a school zone. The New Jersey Supreme Court said in 1991 in a case called Ivory that essentially the crime is thirty five five plus a tape measure. You see how close you are to school property. The next year in a case called Dillehay, 1992, the court went on to say that thirty five five is an included offense in thirty five seven. So if anything is an element of thirty five five, it's an element of thirty five seven. So you have to look at thirty five five to see whether drug type is an element. That statute lists 14 different types of drugs and subtypes and amounts. And the sentences vary depending upon the type and amount of drugs. So that's clearly divisible to me. If we needed any more evidence of that, there's a trio of of New Jersey appellate court cases going back through the 80s up till recently. And they are called Jordan Bacote, B-A-C-O-T-E and Rivestineo, R-I-V-E-S-T-I-N-E-O, I believe. All three of those say the following. The government, if it's going to try to convict someone who it's found with, say, three drugs, three types of drugs, say cocaine, marijuana, heroin, it has to charge each of those types separately. A jury can't aggregate, can't say, well, the 12 of us among us, we agree he had one of those types of drugs and then aggregate the amounts. The jury has to find for each one, he had that type of drug and had it in an agreed upon amount. That, to me, says exactly why drug type has to be an element of 35-5 and therefore it has to be an element of 35-7. So when Ovilus in footnote 7 says, oh, this could be a hybrid statute because we're looking at, you know, more than an ounce of marijuana, less than an ounce, the problem with that is that's everything after the first sentence of 35-7. That's just a portion of this statute that says the circumstances under which a defendant will not be able to get parole. That's strictly a sentencing caveat. That's not the element of 35-7. So, you know, if you find that this case is divisible, now you can to the documents and I think to Mr. Vega's concessions below where he conceded he was convicted of cocaine. All right, but to look at the Shepard documents, to home in on the cocaine conviction, etc., these are all, as I understand it, arguments as to why you would win if we were looking at this case under a normal standard of review. We can avoid all that by saying everything you've just told us is extremely complicated and because it's extremely complicated, there can't be plain error. I agree. Would that not be the easiest way to dispose of that issue? That would be the easiest way to dispose of that issue. But you're flagging these other points because you're arguing, it's your position that there are some inaccuracies in what we said in Ovilus. Right, right. And they mattered in Ovilus. They didn't matter in Martinez, but it did in Ovilus. So, I think, yes, the way you can distinguish or avoid all of that is through plain error review and then just go from there. Say the error isn't plain because look how abstruse this is. I mean, I had to go from 851 to 841 to 802 and then depending on which approach you use, I either had to compare 802-44 with the historical state statutes or I had to do all of that comparing the historical schedules in the United States and in New Jersey at the relevant times. So, yeah, it's quite abstruse. Let me ask you a question about the organizer leader enhancement. Bella Terre says you have to be more than just a supplier. So, Vega, let's assume he's a supplier, but you need more. Guadalupe was the one, it seems to me from the record, that Guadalupe wanted the hidden compartment in his car and Vega got it for him. He helped him get it. He knew somebody in the Bronx, actually took the car over. But, you know, it was Guadalupe who wanted that. It wasn't Vega who wanted it for Guadalupe. At least that's the way I read the record. What else gets you there? What else makes him the organizer or leader? Well, just to be clear, the testimony Guadalupe said is he goes, oh yeah, I had to put it in my car. I wanted it. That doesn't mean Vega didn't propose it to him first. That could mean Guadalupe just agreed with him, yeah, I want that in my car. We know Guadalupe didn't care before he was dealing with Vega because he was hauling heroin just in the trunk of his car. So, something happened there, but Vega was the one who made all of that happen. We know that the car… There's nothing in the record that says I'm not going to sell to you unless you have a hidden compartment because I don't want my heroin to get picked off on the fencing at Turnpike. That's very fair, yes, that's right. So, what else? So, Vega is the one who actually takes the car to New York and remember initially Guadalupe's not allowed to know where it's going in New York. Then Vega brings it back. He shows him where the trap is and how to use it. We can infer that because who else is going to do it? No one comes back. There's the stash houses. Remember that Vega takes at least one defendant around to multiple stash houses where that defendant says, and I saw the same people working there and it was like a processing line for heroin. So, that's pretty clear. How does that make him a leader organizer? Because it… So, he doesn't necessarily have to… The record doesn't show that those were Vega's stash houses. Vega just took him to those stash houses. Well, I think given the nature of his stash house, Your Honor, if it wasn't his stash house, people would be awfully surprised to see him there. It may not have been his alone, but it was definitely… He definitely had the right to extract drugs from it because one of the defendants said, I saw one of the guys hand him the heroin that I wanted in that case. So, you know, you have that. You have the car. You have the relationships, you know, between the people. You have at least one occasion Vega is somebody he rented a car for. And I cited cases that show, most of them unpublished or out of circuit, but let's not stand on ceremony, right? But they say essentially that facts like these can contribute to a finding of a leader organizer. And then, of course, there's the fronting that Your Honor mentioned too, and that's very, very important. If it had been just a little bit, maybe not, but this amount is massive. And what's our standard of review of reviewing the finding of the district court that the enhancement applies? I don't think that's preserved, Your Honor, because the only thing he argued below was that this was more a buyer-seller relationship. And Judge Walton did address that. He wasn't disputing the particular facts he's disputing now, which is, oh, you know, Guadalupe was the one who wanted the trap in the car and so forth. To me, I think that's got to be plain error at this point. So, you know, the one issue Does the guilty verdict of conspiracy inform this decision? It informs the decision as to the buyer-seller part. Yeah, I think it's dispositive of it, frankly. And remember, for the leader organizer, it doesn't have to necessarily be Aldwin Vega and then Guadalupe and Martinez and Drew. It can be Aldwin Vega and the people at this stash house plus one of these people. So, and it doesn't necessarily have to be, that's what I'm waiting for in an opinion that a case I argued a year ago today in this courtroom called Antoinette Adair. I'm hoping to see an opinion soon, but that should inform the court's analysis of the leader organizer enhancement because that was a one of the important issues raised in that case. Antoinette Adair, A-D-A-I-R. It was argued before judges Smith, Roth, and Phipps here a year ago. So I don't think it'll necessarily be dispositive. It should flesh out maybe. But I think we do have all of the pertinent facts that other courts have said go into the hopper when you consider what someone's leading or organizing. It's not necessarily going to be a corporate structure or a supervisory type relationship. There's a different subsection of that guideline that deals with manager supervisor and he was given the leader organizer enhancement. So to me, you know, an organizer may even be a person who's not necessarily leading anyone. This is the person who just sort of put the clocks in motion and stood back and watched them work. We at least see that much happening with Aldwin Vega. But I think more, I mean, he comes to Pittsburgh to kind of vet Drew when, at least during the keeping sort of a clean strand of his drug dealing out from Elizabeth, New Jersey into Pittsburgh. So, you know, all of that plus, you know, everything else I said in my brief, I think works. Thank you, Mr. Kokas. Thank you, counsel, for the briefing and argument. It's been very helpful. We'll take the matter under advisement.